ELIZABETH STREET

*v.*

JOSEPH J. HARRIS.

[Submitted May 5th, 1921. Decided May 24th. 1921.]

1. In a contract for the sale of a building "subject to a first mortgage now encumbering the property held by the C. B. & L. Association in the sum of $36,000," the minds of the parties never met when the mortgage

referred to was an installment mortgage, secured by one' hundred and eighty shares of building and loan association stock, pledged as collateral, upon which installments amounting to $1,800 had been paid, specific performance could not be decreed since the court could not direct the purchasers to pay $1,800 and take an assignment of such shares.

2. Where an action was brought for specific performance of a contract to purchase a building on a certain theory and construction of the contract, and the defendant counter-claimed on a different construction and prayed for specific performance, and the court determined that the bill and counter-claim should both be dismissed, an application by the defendant for a decree under the complainant's theory of the contract should not be granted, the defendant's conduct being otherwise inequitable.

On bill and counter-claim, each party seeking specific performance of a contract for the sale of lands.

*Messrs. Collins & Corbin* and *Mr. David A. Newton,* for the complainant.

*Mr. George G. Tennant,* for the defendant.

GRIFFIN, V. C.

In this case the complainant contracted to sell to the defendant and the defendant agreed to purchase a plot of land known as No. 2957 Boulevard (Jersey City), with the building thereon named "The Elizabethian," for the sum of $63,250, payment to be made and secured as follows:

| | |
|---|---|
| On the execution of the agreement............... | $2,000.00 |
| Cash on delivery of the deed..................... | 8,250.00 |
| "Subject to first mortgage now encumbering the property held by the Colonial Building and Loan Association in the sum of......................... | 36,000.00" |
| Subject to a second mortgage in the sum of........ | 4,400.00 |
| By the execution of a third bond and mortgage covering the property, &c........................... | 12,600.00 |
| | $63,250.00 |

The difference between the parties arose on the clause above quoted touching the $36,000 mortgage.

It seems that the mortgage is an installment mortgage, and by its provisions there were one hundred and eighty shares of the building loan pledged as collateral, and upon which the loan was predicated; and the mortgage was subject to discharge by efflux of time when the one hundred and eighty shares attained the value of $200 each, thus equaling the amount due on the bond.

The scheme of the building loan is as follows: When the shares of stock reach the value of $200, non-borrowing members become entitled to receive $200 in cash per share; and borrowing members, whose stock is pledged as collateral for mortgage loans, are entitled to have their mortgages discharged.

At the time fixed for the closing of the title about eighteen hundred dollars had been paid on the stock; and this sum, for the purpose of calculating the interest, as well as all subsequent payments on account of the stock, by the plan, are deductible from the $36,000, and interest is payable on the balance thus ascertained. Otherwise, as I read the bond and mortgage, the debt remains $36,000.

One thing apparently not foreseen by the parties, and upon which their minds did not turn, was the adjustment to be made of the moneys paid in on account of the shares of stock, as well as the assignment thereof to the purchaser, subject to the collateral pledge.

Bearing in mind that the contract provides that the conveyance shall be subject to the building loan mortgage "now encumbering the property," and did not provide for the placing of a new mortgage for that amount upon it, and, turning to the condition of this bond and mortgage, which provides that the mortgage shall be paid "by the payment of one dollar per month" per share on this very stock standing in the name of the complainant and pledged as collateral, it is quite unlikely that Mr. Harris intended to continue paying on stock standing in the name of Mrs. Street, and not in his own, until the mortgage was canceled or the shares matured. And it is also quite unlikely that Mrs. Street contemplated that her $1,800 were to remain invested in this fashion until the shares matured or the mortgage was canceled. Mr. Harris knew of the methods of building loans in the furnishing of what are termed "straight mortgages" and "install-

ment mortgages." He has an installment mortgage covering his own home. He would have the court believe that he did not know that this mortgage was an installment mortgage, although the strong trend of the evidence is that he knew all about it. His contract, however, entitled him to have a $36,000 mortgage, without requiring him to purchase these shares pledged as collateral; and, therefore, as to him, to direct that he pay $1,800 and take an assignment of these shares, would be making a new contract for him. And, as to Mrs. Street, it is quite plain that she did not comprehend the real situation as to the status of her stock on the sale; and, therefore, no provision was made in the contract with respect to this vital question.

The parties had conferences with the idea of settling, but seem to have been unable to agree. Mrs. Street was willing to let the $1,800 be added to her third mortgage; but Mr. Harris seemed to think that a much larger first mortgage would make the property more readily salable; and he declined to accede to this proposition.

I do not deem it necessary to go further into this matter, beyond pointing out that the minds of the parties did not meet on this contract, and, therefore, a court of equity should not enforce it. *Braentigan* v. *Edwards, 38 N. J. Eq. 542.* I will advise a decree that the bill be dismissed.

This same reasoning also leads to a dismissal of the counterclaim of the defendant, and I will so advise.

After counsel received the memorandum of the court deciding the cause, defendant's counsel applied for a decree that the premises be conveyed to him on complainant's version of the contract.

MEMORANDUM ON FOREGOING APPLICATION.

The application of the defendant for leave to take the property after the court has decided the case, but before decree signed, I think presents a situation somewhat analogous to the rule in equity that after the court has announced its decision complainant cannot dismiss his bill, although no decree had been entered

or signed. *McCurdy* v. *Mather (Conn.), Kirby 273,* cited by Vice-Chancellor Pitney in *McCarren* v. *Coogan,* 50 *N. J. Eq.* 268 *(272),* and, at law, that a plaintiff cannot, against the will of the defendant, submit to a voluntary nonsuit after the jury has retired. *Bauman* v. *Whiteley, 57 N. J. Law 487; Dobkin* v. *Dittmers, 76 N. J. Law 235; Wolf* v. *Fulton Railway Co., 83 N. J. Law 344; Malone* v. *Erie Railroad Co., 90 N. J. Law 350.*

In this case the complainant, before filing the bill, not only offered to perform according to her conception of the contract, but to allow defendant some $600 to cover his expenses in procuring a loan of $36,000, to conform to his version of the contract, and also offered, as a second proposition, to add the $1,800 paid into the building loan to her third mortgage and assign the certificate of stock and pass-book to him. This he refused.

He at first agreed to take the $600 proposition, but, later, claiming that he was also entitled to $500 more for loss of time, complainant declined to accede to his demand, and filed her bill. He answered, and by way of counter-claim insisted that the contract should be performed to the letter according to his version.

The substance of his final demand before suit brought was that, by reason of there being a building loan mortgage upon which $1,800 had been paid on the stock assigned, she should either retain the stock, treating the mortgage as $36,000, or, if he took the stock and included its value in her third mortgage, she should allow him $1,100 abatement of the purchase-money, because he desired that a first mortgage should be on the premises for $36,000.

An ordinary fair-minded business man would have accepted complainant's offer to add the $1,800 to her third mortgage, but this he declined to accede to, and the court, being unable to make a contract for them, announced in a memorandum to counsel that both bill and counter-claim should be dismissed. Now, having gambled on the decision of the court, and lost, he expresses his willingness to accept a deed on the complainant's version of the contract, and asks that the court so decree.

His whole course of conduct has been inequitable. In his counter-claim he does not offer to take the property with an abatement of the purchase price; thus he held himself plainly

in a position to withdraw if the property deteriorated in value; and, now, that it may have appreciated during the considerable lapse of time since the bill was filed, he, after the court had decided the case, says, "Give me the property on the basis of complainant's version of the contract."

Apart from the fact that the court should not now listen to his plaint for want of equity in his course of conduct prior to the decision of the cause, to hear him now would encourage trifling with the court, which should not be tolerated.

I will, accordingly, advise a decree in accordance with the views expressed in the previous memorandum.